Good morning, Your Honors. May it please the Court, Katherine Balkoski for Petitioner, Mr. Vazquez. I'd like to reserve five minutes of my time for rebuttal. That's fine. Just keep your eye on the clock, please. I will. I will do that. Thank you, Your Honor. This Court should remand to the BIA and instruct the BIA to vacate the defective removal order under Gomez. Petitioner is a permanent resident who is not removable under an en banc decision of this Court. The government acknowledges as much, but asks the agency to be allowed to consider the Gomez issue in the first instance. What the government asks for is senseless for three primary reasons. First, there is nothing left to apply or analyze on remand. This is a pure legal question. This Court can and should decide. Second, this Court should avoid subjecting a permanent resident to additional months or years of detention, and even potentially to deportation, given that the BIA may skirt the Gomez issue on remand and fall back on its position that Petitioner waived appeal. Third, there are no alternative grounds on which to affirm the removal order. Only one charged ground is before this Court, and the government is bound by how it has litigated this case. So on our first point, there's nothing left to analyze or apply on remand. Again, invalidity under Gomez is a pure legal question. And in cases such as Aguilar-Torcillos, Al-Mutareb, and Gomez-Ponce, which we cite in our supplemental brief, this Court ruled on the issue that the removal order was legally defective and ordered vacatur. This Court should do the same here. Can I stop you there? Because if we do that, then on remand, what happens? On remand, the agency vacates the defective removal order, and the agency could attempt to bring a second deportation case against Mr. Vazquez. It's not clear if the government would be able to bring charges of removability based on additional facts, but it is clear from the case law that the government would be precluded from bringing a second deportation case based on facts that were known to it at the time that it brought its first case. Cases like Aguilar-Torcillos, Al-Mutareb, and Bravo-Pedrosa make clear that race judicata would bar the government from initiating a second deportation case without new evidence or new facts to support charges in that second case. Returning to the cases under which it's clear that vacatur is appropriate here, in Aguilar-Torcillos, the underlying conviction was not an aggravated felony. This Court ordered vacatur. In Al-Mutareb, similarly, the sole charge ground was legally unsupportable. This Court ordered vacatur. And in Gomez-Ponce, this Court expressly held remand is unnecessary to decide a purely legal question over which the BIA has no particular expertise. That's exactly the situation here. The law could not be clearer. Counsel, I don't disagree with the point that you're making. The question that I have is we can also list a whole bunch of cases where we've done the opposite, where we've just remanded for the agency to deal with this new intervening issue, even questions of law. And so I guess I'm going to be interested in hearing what the government has to say about this. But what is the practical difference between vacating or just sending it back down and saying, you know, pay attention to Gomez and apply it in this case? Thank you, Your Honor. There's a significant practical difference. Mr. Vazquez has been in detention since August of 2023. The government has been on notice since September of 2024 that the sole removal ground was defective. September of 2024 is when the original panel decision in Gomez came out. The government had the opportunity to seek a remand then and to attempt to amend the charges against Mr. Vazquez then. It could take years for the BIA to apply Gomez now. And more troublingly, the board could decline to reach the Gomez issue. What makes you think it's going to take years? Because of delay that we've seen before the agency in similar cases. I don't have any authority on that point to point you to, but I will represent to the court that in other cases that I'm aware of, the BIA has taken many months, if not years, to rule on remand on issues sent back by this court. Has the government taken any position regarding the detention status since the en banc decision issued in January? We discussed with the government. Well, we went into mediation with the government, and I can't disclose the contents of those confidential mediation discussions, but we have brought up with the government the possibility of Mr. Vazquez being released during the pendency of these proceedings, and we were not able to reach it. So he remains detained today? He remains detained, yes. He's been in detention since August of 2023. And we are concerned that he will continue to remain detained for perhaps years while the board sits on this issue or even declines to reach the issue and falls back on its prior position that he waived appeal. So if the consequences are as significant as you are suggesting, and certainly, you know, a prolonged unjustified detention is significant, why didn't you initially ask for vacature? Because you're only asking for it for the first time in the supplemental briefing that we've received, even though you've been asking for quite some time to have the proceedings sent back down to the BIA. The conditions on the ground have changed. Previously, the government represented to us that they would be taking Gomez en banc or they would be seeking rehearing en banc of Gomez. And at this point, that has happened. The en banc decision came out in January. The government's time to seek cert at the Supreme Court has now lapsed. Gomez is now as binding as binding can be in the circuit. That was true when your briefing was being, when you were initiating your briefing, because Gomez had already been decided. And the outcome of the original Gomez and the en banc Gomez is the same. That's correct, Your Honor. But the difference is that the government represented to us that they were taking Gomez, that they were seeking to take Gomez en banc. Sure, but until en banc happens and the panel's decision is vacated, it's in effect on binding. And we did seek a remand at that time, and we did take the position that Gomez clearly made petitioner not removable. The government resisted a remand and sought a stay pending the Gomez rehearing proceedings. We didn't agree to a stay because of Mr. Vazquez's detention, and he didn't want to wait on his other meritorious issues on appeal because we feared that the Gomez petition proceedings could, the Gomez rehearing proceedings could take years. After the three-judge panel issued in Gomez, that was a break with our prior precedent, and there's another layer then that needs to get worked out, which is Miller v. GAMI, right, and whether or not it was going to, whether the three-judge panel opinion that was expressed there was going to hold up after that review. But after, but we knew as of September, we knew earlier than that we were going to hear it en banc. That's when we did hear it en banc, and then in January, the en banc decision issued, and the Miller v. GAMI decision was, I guess I would say, solidified by our en banc court. I don't see any room for, maybe opposing counsel can talk about that when she comes to the microphone. There was a, you know, arguably there was an interest circuit split pre-en banc. Certainly it was muddy. I think you both asked the Ninth Circuit to hold up, and both of those motions were denied. We never asked for a stay. The government sought a stay twice, and we opposed. You sought a remand. We did seek a remand, correct. And the government, and both of you did, that's what I mean about hold up. Yes. Pardon me for being imprecise, but you filed a motion to seek remand in light of Gomez, and the government filed a motion to stay in light of Gomez. I think you both recognized that was going to need to be worked out. But both of those requests were denied, right? Precisely, yes.  All right. As I said, if this court simply remands for the BIA to consider the impact of Gomez in the first instance, there is a serious risk that the board would simply decline to reach the Gomez issue and would hold again that Mr. Vazquez waived appeal. And as this court held in Vega-Anguillano v. Barr, to allow a legally invalid removal order to be executed would constitute a gross miscarriage of justice. Throughout these proceedings, there has been some conduct from the government that we consider concerning. First, before the BIA, Mr. Vazquez was promised a new schedule in which to submit briefing, and then the BIA summarily dismissed his appeal before ever setting that schedule. The government tried to remove Mr. Vazquez in August of 2024, which required emergency motion practice from counsel. The government has declined to provide the full record on appeal. We only have transcripts of the individual calendar hearing and none of the master calendar hearings before the agency, and the government's only explanation for that is, well, that's what was before the BIA, suggesting that they can pick and choose what parts of the record should be submitted to this court. And again, the government has pursued delay at every stage in this case, which has caused burden on the petitioner who's remained in detention and on this court. I see that my time is ticking, and I would like to save five minutes for rebuttal. That's fine. Thank you. That's fine. Thank you. Thank you. May it please the Court, Alana Jung for the Acting Attorney General. Your Honors, the government would like this court to remand this case to the board, so that the board can have only two options. One option is to terminate proceedings, and the second option is to remand to the immigration judge. That is what the government is requesting this court to do. Counsel, I'm going to ask you if you could speak up just a little bit. I'm sorry. That's all right. It's an echoey room with a lot of marble in it, so if you could speak up just a bit, that would help me. Is that better? Yes.  Should I repeat what I asked? Yes. Okay. Go ahead. You said the government would have two choices, and they were? Yes. It was your punchline that got lost. Yes, that was my punchline. The government would like this court to remand the proceedings for the board, but what is the point of a remand without vacateur? I mean, the board can't say the en banc court was wrong. Your Honor, our position is the board only has two options. It would terminate proceedings and apply the en banc decision, or two, it would remand the proceedings to the immigration judge for further proceedings. Or the immigration judge, too. Well, the immigration judge could terminate proceedings, or the immigration judge could permit the DHS to lodge additional charges. But there isn't any world in which DHS can't lodge additional charges, can it? I mean, I think that's a given. I think opposing counsel has conceded that point. It's just that on the first point, which is this existing order, you've said, I think, very candidly, and I appreciate your candor, that under our precedent, that cannot be executed. That order of removal cannot be executed. Yes, Your Honor. So on the Gomez question, on the Gomez point, which is what Judge Thomas is asking, there isn't anything for the board to do, is there? There is the technical aspect of the board determining that the ground of removability is not valid. Okay, so now we're really spicing it. But I think what opposing counsel is asking is for us to enter an order here that says, after Gomez, we're remanding for the board to vacate the order of removal. Yes, Your Honor. Do you object to that? We do object to that, Your Honor. We are objecting to the language of vacating the removal order. Vacating the removal order could terminate the proceedings. But you would be free to reinitiate, right? There is a difference because that's when res judicata would apply, Your Honor. Because if we reinitiate, we would have to charge a second NTA. And so that second NTA would be a separate action, and that's where res judicata would apply. Whereas in this case, if you are remanding to the board, the board can terminate proceedings, then this is gone. But if the board remands to the IJ, this is a continuation of the current proceedings. It's not a separate proceedings, and the DHS can lodge additional charges. Right, but so he's detained right now. Yes, Your Honor. And the average time to get to the board is six months to two years, correct? I mean, there are three million cases pending before the BIA in the immigration courts right now, right? But it's different because this would be a remand from this court. I understand, but we've looked at remands before, and it takes months or sometimes a lot longer to get to the case. And if it's a further remand, we're looking at a year or so in detention when the ground for removal, as you can see, has disappeared. But, Your Honor, this is one, it's a federal court remand, and two, he is detained. And so under the board's policy, under EOIR's policy memos, under the board's practice manual, this detained case would move faster. I agree with you on that, but they're still taking a long time on detained cases. I mean, because they've got, and I understand why, they've got a huge backlog of cases. And so even those with priority are taking months, years. The government recognizes that, Your Honor, but we are still requesting that the court remand so that the board has that option of either terminating or doing what it does as the agency, either terminating or remanding to the immigration judge. And you would oppose letting him out? That would have to be, I think that would be a conversation that I would have to have with our clients, with DHS. Well, counsel, if the conversation hasn't been had, and I don't mean to pry, but the three-judge panel in Gomez, that decision was issued two years ago this month. Yes, Your Honor. And so, and as this court. And he's detained this whole time. I understand, Your Honor. And as this court said, like, when that panel decision was issued, prior president, 2009, 2015, 2018. Well, I've given you that. I've given you that in my questions to opposing counsel, but then we took it on bonk. We took it, and we, the government had every right to take it on bonk. Right, and the on-bonk decision issued in January, and you're saying the conversation would have to have, it's been three more months. We have, we, there hasn't been a conversation about him being released pending whatever needs to happen next in this case. I think that conversation, that's for every client conversation. Well, as I said, I don't. I don't mean to pry, but I'm just trying to express concern. This is taking a really long time, and I'm waiting for a justification for the government. Why is that? But I think we can ask the question, like, what is the government's position on this petitioner's detention? We, he's currently, he is currently still subject to detention because the agency still needs to decide, still has to take that step of determining that the ground of removability is no longer valid. Wait, wait, wait. You conceded that in your briefing. I do. You conceded it in your briefing. But there's that technical aspect of it that the agency still has to do something. That doesn't make any sense to me. The government's position is this guy needs to stay detained because there's some sort of technicality. We all understand that the removal order that's been issued in this case is invalid. Yes, Your Honor. But it still has to go back to the agency for, or this court to determine that, Your Honor. No, we already determined that under Gomez. Under Gomez, under, and that is under Gomez, but not in this case. In this case, your briefing tells us that the order of removal is invalid and cannot be executed. You've conceded that, counsel. Yes, Your Honor. We did concede that. But what has to be determined? I don't understand your answer to Judge Forrest's question. The agency has to, the agency has to, the agency has to determine that the ground of removal is no longer valid. How can the agency say it's valid when our own bond court said it's not? It wouldn't, Your Honor. And that's why we are asking the court to remantle that. Counsel, I think you're arguing yourself right into vacature. I don't understand your position at all. We agree. To get back to Judge Forrest's earlier point, we have cases that probably go both ways. We vacated in some cases and have it in others. So it's really kind of up to us and not the board, isn't it, to decide what to do? Yes, Your Honor. Okay. Yes, Your Honor. And this one's a pure question of law. It's a categorical analysis that our en banc has done. And, frankly, we wouldn't have deferred to the agency under Biden being president. We wouldn't defer before Loeb or Bright. Yes, Your Honor. And so, but the government is requesting remand so that the agency can take further proceedings if it decides to. Well, let me ask you this. Yes. Why didn't you ask for remand as soon as Gomez was decided two years ago? Because we were, because we asked. Because you were in briefing, huh? Well, we were seeking a stay and so that we can pursue en banc proceedings. So we did pursue en banc proceedings.  But once Gomez was decided by the en banc court, you could have come back here and asked for the same relief you're asking today. That was two years ago. Well, the en… Well, a year ago. When the, I think you two are, there's the three-judge panel opinion, and that's been two years. That's been two years. You're right. And so when the en banc decision came, we were in discussions with my friend on the other side about remand. And we were working through the nuances of remand. But I think also under discussion about detention, that's been, to Judge Thomas's point, that's been another three months and this man's still detained. Yes, Your Honor. We understand that. And it's just us talking with my friend on the other side, us talking with our clients, whether our clients could bring additional charges. Our clients have identified additional charges that they could bring. And so that's one of, that's why we are requesting this court to either remand for the board to terminate. The waiver is no longer relevant. We concede that. And then, or for the board to remand for the ITA to take further proceedings. Okay. Let me just check in because we've talked over each other a little bit. Judge Forrest, do you have additional questions? Yes. Oh. So if the government has additional charges, couldn't you just file them? We could. Well, not right now, Your Honor, because the case is before this court. But if there would be additional charges, they're going to be on wholly different grounds. Can you not have two different? I'm failing to understand the practical thing that you think the government is going to miss out on if we just vacate. What we all understand is an invalid removal order. Like there's no way to make the removal order that has been issued so far legitimate. There's no way to do that under our case law, under Gomez. So if the government has a new basis that perhaps it can bring because it didn't know about it before, then why can't you just do that? Various reasons, Your Honor. First, it's the distinction between the removal order that this court would be vacating and the agency vacating the ground of removal. We see those as two separate things. If this court vacates the removal order, that gets rid of the current removal proceedings. Whereas if you vacate the grounds of removal, the current proceedings would still be active. The current NTA could be amended with I-261 with additional charges. And so the practical implication, Your Honor, is exactly that. We think res judicata would apply if this court orders vacature of the removal order and this set of removal proceedings goes away. Because it would be, if we file a new NTA, that's a separate proceedings. That's a separate proceedings which this court has talked about. Whereas, like in Valencia Alvarez, the court was talking about one set of removal proceedings from one NTA. And so if this court just orders remands and not vacature of the removal order, then the board can terminate. The waiver's out. The board can terminate or remand to the IJ, and the IJ can permit ICE to lodge additional charges. And that would be based on the current NTA, not a separate NTA. Right. It would be the same action, not a separate action. Not to interrupt, sorry. But to Judge Forrest's point, even if we vacated, you could bring new charges. What you're saying is it would be inconvenient. No, Your Honor. Why are you precluded from bringing new charges if this is vacated? Because that would be under a second NTA. Yeah, I understand. But there's nothing that stops you from a second NTA, correct? Except that he's released. No, Your Honor. We would have to, one of the charges would actually, the crux is, could have been brought in the proceedings. If we could have brought those charges, then in the second proceeding, we cannot bring those charges. It'd have to arise from new facts or circumstances. Yes, Your Honor. You don't want those facts and circumstances to be basically tossed out the window. Yes, Your Honor. Whereas if you continue with the current action, like in Valencia Alvarez, the NTA, it's still the same NTA. It's just additional charges on that NTA. It's the same action. How long has the government known about these additional bases for removal? It's been, I probably, for me, it's been about a week or less, Your Honor. Anything that prevented the government from serving him with a new NTA while he's been sitting in detention? Because of additional charges, Your Honor, not a new NTA. No, I mean a new NTA. Is there anything that would have prevented the government from starting a new proceeding? Well, it's prosecutorial discretion, Your Honor. We only needed one charge. Does that mean no? You've got one charge and you've known for at least two years that it's arguably no longer valid. You've known for the last three months it's definitely not valid. And you've conceded as much in your briefing to our court. You've said that waiver is no longer relevant. So I'm trying to figure out. I fully appreciate why you don't want to have to start with a new NTA. You've explained that it would have to arise from new facts or circumstances. I appreciate that. I'm just trying to figure out whether anything prevents you from having done that. It was our going through the process of first relying on the history of the cases prior to Gomez and us only needing one charge of removability. And when the case law was in flux, we were pursuing our appeal. But that's the lead up to my question. And my question is, after that chronology, after it became clear you could not rely on the single charge for this order of removal, which you've conceded candidly and I appreciate, is there anything that has prevented the government from going forward and serving this gentleman with a new NTA? The issue of Registered Uticada, Your Honor. No, a new NTA would need. That's what's baked into my question, Counsel. A new NTA, Your Honor, would put petitioner in a new removal proceeding. And that's the point. And that's the point. You said that you would have two choices, and if we were to vacate this, your concern is then you would have to start over with a new NTA if that existing order is vacated and he is released. And I'm just asking whether anything would have prevented you from doing that. That's your fallback. That's the worst thing that could happen for you is that you'd have to start over again. And Judge Thomas has suggested that would be inconvenient for you and it would be time-consuming. I'm just trying to figure out is there any reason you couldn't have done that, maybe as a belt and suspenders, so that something would be happening over the course of this last three months. No, Your Honor, we were in proceedings. We were in discussion with my friend on the other side with remanding the case. I see. And so we weren't going to pursue two – we weren't pursuing two different litigation strategies. Is the answer to my question you could have? It really is a sincere question. Would anything have prevented you from serving him with the NTA while you have him? I think litigation strategy-wise we – We're asking a legal – I think the question is legal. It's just a legal question. Is there a bar or you just made a choice? There is – as far as I'm aware right now, there would be no bar, Your Honor. It wasn't a trick question and it was a legal question. Thank you. You've answered it, though. Thank you. But I think the whole point is you could have asked for remand on the original Gomez. Are you telling – I don't want you to disclose your strategy, but are you representing to us today that you're going to bring additional charges regardless? We – Or do you know? We want to bring – we would like to bring additional charges, Your Honor. It was when the panel decision in Gomez came out, we decided to pursue a stay because that was our office policy. Right. Our office policy was pursuing a stay. It was a litigation strategy. Yes. Right. We were pursuing a – we were pursuing a stay, Your Honor. You weren't prevented. It was a matter of choice. There was nothing stopping us legally as this court. Yes. Thank you. Okay. It's an unusual posture. Our questions aren't supposed to be tricky or confusing. We're really trying to figure out where the boundaries are, and I think you've answered those questions. Okay. I understand, Your Honor. I am also trying to figure out the boundaries of the government's position with your questions. Thank you. Thank you. Judge Thomas, did I cut you off? Okay. I think that's all we've got. Thank you very much for your patience with our questions, counsel. Three points on rebuttal. First, we would ask this court for an order expressly stating that the agency can't bring new charges, which it could have brought in its first NTA. You mean new charges arising from the same facts, or do you mean new charges? I mean new charges arising from the same facts and circumstances. Okay. In cases such as Aguilar-Torcillos and Al-Mutareb, the government argued against vacator, suggesting that the petitioners in those cases might be removable on other grounds. In both, this court held that those alternative theories of removability were not properly before this court. The government had litigated based on its one theory and lost as a matter of law, and so this court ordered vacator in both of those cases. That's exactly the situation here. Race to Dukata should bar a second case based on a charge which could have been brought in the first instance. I would also like to say that my co-counsel spoke with Petitioner's Habeas Counsel, a habeas petition is currently pending, and my understanding is that the government is opposing the habeas petition. Where is that filed? It's in the southern district of Cali. Thanks. Finally, during the pendency of the proceedings before this court, nothing prevented the government from filing a motion to reopen at the agency level. As your honors have asked my friend on the other side about, the government chose its strategy of pursuing this one charge of removability. It had ample opportunity to try to amend the charges before the agency, even during these proceedings. It put all of its eggs in the 245A1 Gomez basket. It managed to get this case. Well, they did, but my point was slightly different, which is I don't think anything limits them on remand. So they could have filed a motion to remand and reopen. They could have, I think, also abandoned ship because they have, as I said, very candidly conceded here that this order for removal cannot be executed. And so, Mike, I am curious about whether you agree that there's nothing that prevents them from serving him with a new notice to appear. Nothing would prevent them from serving him with a new notice to appear based on charges that could not have been brought in the first notice to appear. All right. That's what you said the first time you were at the podium. And it sounds like you haven't changed your mind about that. So thank you for that. I have nothing further. All right. Your honors. Looks like we don't have any additional questions for either one of you. Thank you both for your advocacy. We appreciate it very much. And thank you for your pro bono service, counsel. We'll go on to the next case on the calendar, which is Soto Lopez versus Blanche.
judges: THOMAS, CHRISTEN, FORREST